﻿Citation Nr: AXXXXXXXX
Decision Date: 06/16/20 Archive Date: 06/16/20

DOCKET NO. 190710-11803
DATE: June 16, 2020

ORDER

Readjudication of the claim for service connection for low back condition is warranted; to this extent only the appeal is granted.

Service connection for hypertension, as secondary to service-connected traumatic brain injury (TBI) is granted.

Entitlement to service connection for right knee condition, to include as secondary to left knee condition, is denied.

Entitlement to a rating in excess of 20 percent for left knee condition is denied. 

Entitlement to a separate 10 percent, but no higher, rating throughout the period on appeal for painful limitation of flexion of the left knee is granted, subject to the regulations governing the payment of monetary awards.

Entitlement to an initial rating in excess of 10 percent for tinnitus is denied.

Entitlement to an effective date prior to November 7, 2014 for the award of service connection for posttraumatic stress disorder (PTSD) is denied.

Entitlement to an effective date prior to November 20, 2008 for the 40 percent disability rating for TBI is denied.

 

REMANDED

Entitlement to service connection for low back condition is remanded.

Entitlement to an initial rating in excess of 30 percent for complicated tension headaches is remanded.

Entitlement to separate ratings for PTSD and TBI, which were combined effective November 7, 2014, is remanded. 

Entitlement to a rating in excess of 70 percent for the combined PTSD with TBI rating effective November 7, 2014 is remanded.

Entitlement to an effective date prior to November 7, 2014 for the 30 percent disability rating for complicated tension headaches is remanded.

Entitlement to an effective date prior to November 7, 2014 for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

Entitlement to an effective date prior to November 7, 2014 for eligibility to Dependents’ Educational Assistance under 38 U.S.C. chapter 35 is remanded.

FINDINGS OF FACT

1. The Veteran’s claim for service connection for a low back condition was previously denied by a December 2013 rating decision; the Veteran did not appeal the decision and documentation constituting new and material evidence was not actually or constructively received within the one-year appeal period.

2. New evidence was received after the December 2013 rating decision that is relevant to the issue of entitlement to service connection for low back condition. 

3. The evidence is at least in equipoise that the Veteran’s hypertension is caused by his service-connected TBI.

4. The Veteran’s right knee condition is not caused or aggravated by his service-connected left knee condition.

5. Throughout the appeal period, the Veteran’s left knee has been manifested by no lateral instability; however, the Veteran’s 20 percent rating under Diagnostic has been in effect for more than 20 years.

6. Throughout the appeal period, the Veteran’s left knee condition has been manifested by flexion at most limited to 135 degrees with pain, with no limitation of extension.

7. The Veteran’s tinnitus is assigned a 10 percent rating, which is the maximum rating authorized under Diagnostic Code 6260.

8. A February 2010 rating decision implicitly finally denied a claim of service connection for any acquired psychiatric disorder.

9. Subsequent to the February 2010 final denial, the Veteran did not submit an informal or formal communication expressing an intent to file a claim of service connection for PTSD until November 7, 2014.

10. On October 23, 2008, VA regulations revising the rating criteria used to evaluate TBI became effective. 

11. On November 20, 2009, the Veteran filed a claim seeking review of his evaluation for TBI under the revised criteria. 

 

 

CONCLUSIONS OF LAW

1. The December 2013 rating decision denying service connection for low back condition is final. 38 U.S.C. § 7105 (2012 & West Supp. 2019); 38 C.F.R. §§ 3.156, 19.20, 19.21, 19.52, 20.1103 (2019).

2. The criteria for readjudicating the claim for service connection for low back condition have been met. 38 C.F.R. § 3.156(d) (2019).

3. The criteria for service connection for hypertension are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.310 (2019).

4. The criteria for service connection for right knee condition are not met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.310 (2019). 

5. The criteria for a rating in excess of 20 percent for left knee condition are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.951(b), 4.3, 4.7, 4.71a, Diagnostic Code 5257 (2019). 

6. Throughout the appeal period, the criteria for a separate 10 percent, but no higher, rating for painful limitation of flexion of the left knee are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.7, 4.71a, Diagnostic Code 5260 (2019). 

7. There is no legal basis for the assignment of a schedular rating in excess of 10 percent for tinnitus. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.3, 4.7, 4.87, Diagnostic Code 6260 (2019).

8. Entitlement to an effective date prior to November 7, 2014 for the award of service connection for PTSD is denied. 38 U.S.C. §§ 5101, 5110 (2012); 38 C.F.R. §§ 3.151, 3.155, 3.400 (2019).

9. Entitlement to an effective date prior to November 20, 2008 for the award of a 40 percent rating for TBI is denied. 38 U.S.C. §§ 5101, 5110 (2012); 38 C.F.R. §§ 3.159, 3.400, 4.124A, Diagnostic Code 8045 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty with the United States Navy from December 1993 to May 1997.

Regarding the Veteran’s petition to readjudicate his claim of entitlement to service connection for low back condition, claims of entitlement to service connection for right knee condition and hypertension, claim for a rating in excess of 20 percent for left knee condition, and claims for separate and increased ratings for PTSD and TBI and earlier effective dates for both, in his July 2019 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement), the Veteran opted into the modernized review system following the issuance of the May 2019 statement of the case. 38 C.F.R. § 19.2(d) (2019). The Veteran selected the Direct Review by a Veterans Law Judge lane pursuant to the modernized review system. 38 C.F.R. § 19.2(d). With receipt of the July 2019 Notice of Disagreement, the May 2019 statement of the case is now the decision on appeal for these issues. 

Following the issuance of the May 2019 decision on appeal, the Veteran’s attorney submitted a letter along with the Notice of Disagreement in July 2019 in which the Veteran’s attorney stated “[t]he [V]eteran desires to appeal all of the issues listed in the Decision issued on May 13, 2019.” The Board has liberally construed the attorney’s statement appealing all of the issues listed in the May 2019 statement of the case, and all of the issues are addressed herein. 

Regarding the Veteran’s claims for an increased rating for complicated tension headaches and tinnitus and an earlier effective date for his 30 percent rating for his complicated tension headaches, and entitlement to earlier effective dates for the awards of TDIU and DEA, the matters are before the Board of Veterans’ Appeals (Board) on appeal from a May 2019 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO).

In response to the notification letter dated May 28, 2019, in July 2019, the Veteran submitted a timely Notice of Disagreement where he selected the Direct Review by a Veterans Law Judge lane pursuant to the modernized review system. 38 C.F.R. § 19.2(d). Along with the Notice of Disagreement, the Veteran’s attorney submitted a letter in which the Veteran’s attorney stated “[t]he [V]eteran desires to appeal all of the issues listed in the Decision issued on May 28, 2019.” As with the Notice of Disagreement in response to the May 2019 statement of the case, the Board has liberally construed the attorney’s statement appealing all of the issues listed in the May 2019 rating decision. However, further discussion of the May 2019 rating decision is necessary.

First, the grant of entitlement to nonservice-connected pension benefits was a full grant of benefits and will not be addressed herein. Second, regarding the issues of entitlement to effective dates prior to November 7, 2014, assigned in the May 2019 rating decision, for TDIU and Dependents’ Educational Assistance, the Board notes that the issue of entitlement to TDIU has been on appeal since a September 2016 rating decision, which awarded entitlement to TDIU effective February 16, 2016. Regarding the issue of Dependents’ Educational Assistance, the Board notes that the issue has been on appeal since a December 2017 rating decision, which awarded entitlement to Dependents’ Educational Assistance effective December 14, 2017. The Veteran filed timely VA Forms 21-0958, Notices of Disagreement in August 2017 and June 2018 appealing the effective dates of entitlement to TDIU and Dependents’ Educational Assistance. Neither of these issues were addressed in the May 2019 statement of the case. Under the modernized review system, to properly be before the Board, the Veteran would have needed to opt into the modernized review system after the issuance of a statement of the case on the issues as they were being processed in the legacy system. However, the Board has jurisdiction over these issues because the issues have been raised by the record and are part of the claims for increased ratings for PTSD and TBI, for which the Veteran has properly opted into the modernized review system. See Rice v. Shinseki, 22 Vet. App. 447, 453 (2009) (holding that a claim for TDIU, either expressly raised by the appellant or reasonably raised by the record, is part of the claim for an increased rating). 

In the Veteran’s two July 2019 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement) forms, the Veteran alleged clear and unmistakable error with the assigned rating effective November 20, 2008 for the Veteran’s TBI. The Agency of Original Jurisdiction (AOJ) has not adjudicated the motion to revise a prior decision based on clear and unmistakable error. Therefore, the Board cannot adjudicate that issue. The appellant may resubmit the motion for clear and unmistakable error to the AOJ or notify the AOJ that the issue is still pending. 

New and Relevant Evidence

Readjudication of the claim for service connection for low back condition is warranted.

The Veteran and his attorney generally contend the Veteran has submitted new and relevant evidence that warrants readjudication of his claim for service connection for low back condition. See VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement), dated July 10, 2019.

A December 2013 rating decision denying service connection for a back condition is final. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104, 3.156, 19.20, 19.21, 19.52, 20.1103. The decision denied service connection for back pains based on a finding that it was not incurred in or related to the Veteran’s service.

In the May 2019 statement of the case, the AOJ found that new and material evidence had not been submitted since the December 2013 rating decision. The issue has been recharacterized to reflect the applicable evidentiary standard of whether new and relevant evidence has been submitted to readjudicate the claim. 38 C.F.R. §§ 3.2501(a)(1), 19.2.

VA will readjudicate a claim if new and relevant evidence is presented or secured. 38 C.F.R. § 3.156(d). New evidence is defined as existing evidence that was not previously part of the actual record before agency adjudicators. 38 C.F.R. § 3.2501(a)(1) (2019). Relevant evidence is defined as evidence that tends to prove or disprove a matter at issue in a claim. Id. 

The Board finds that the Veteran has submitted new and relevant evidence after the December 2013 rating decision. A December 2014 VA treatment record, added to the file in January 2015 as part of development for a different claim, reflects that the Veteran reported that he was “uncertain if the knee pain is causing the back to hurt.” The Veteran is service-connected for a left knee condition. The Veteran’s statement was not record at the time of the December 2013 rating decision and is new and relevant evidence as it provides evidence of a theory of entitlement to service connection for low back condition that was not considered in the December 2013 rating decision. Thus, readjudication of the claim is warranted.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred or aggravated during active military service. 38 U.S.C. § 1110. Generally, service connection requires (1) the existence of a present disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Certain chronic diseases (e.g., hypertension) may be presumptively service connected if they become manifest to a degree of 10 percent or more within one year of leaving qualifying military service. 38 C.F.R. §§ 3.307, 3.309. If a condition listed as a chronic disease in § 3.309(a) is noted during service but is either shown not to be chronic or the diagnosis could be legitimately questioned, then a showing of continuity of related symptomatology after discharge is required to support the claim. 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331(Fed. Cir. 2013). 

Service connection may be granted on a secondary basis for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. Under 38 C.F.R. § 3.310, secondary service connection is permitted based on aggravation; compensation is payable for the degree of aggravation of a non-service-connected disability caused by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). In order to prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) medical nexus evidence establishing a connection between a service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

1. Service connection for hypertension, as secondary to TBI, is granted.

The Veteran and his attorney contend the Veteran’s hypertension is due to his service-connected TBI. 

The May 2019 statement of the case made a favorable finding that the Veteran has a current diagnosis of hypertension. The Board is bound by this favorable finding. 38 C.F.R. § 3.104(c).

An October 1997 rating decision awarded service connection for a TBI. Thus, the Veteran has a service-connected disability.

In a May 2019 letter received prior to issuance of the May 2019 statement of the case, Dr. M.C., a private physician, opined that the Veteran has developed hypertension that is causally related to his TBI. The physician explained that the consequences of TBI include a profound effect on autonomic regulation as supported by cited medical literature. Dr. M.C. explained that the cited medical literature was specific to mild TBI and provided a good understanding of the continuum of injury severity and its association with hypertension. Dr. M.C. noted that the Veteran had a reported positive loss of consciousness for less than 30 minutes and that this would fall in the mild level in relation to the typical parameters used to evaluate the severity of a head trauma. He then explained that the level of severity of a TBI is not necessarily associated with initial injury severity and that the development of autonomic dysregulation is associated with pituitary involvement leading to a susceptibility for change in both the acute and chronic phases of recovery. He stated that those changes have more severe implications in regard to daily function than the presence of a structural defect noted on a scan at the time of trauma. Based on this rationale, Dr. M.C. concluded that the medical literature supported a causal relationship between the Veteran’s mild TBI and the development of hypertension.

The Board places great weight of probative value on this opinion as it provides a reasoned rationale for the conclusions reached. It also reflects knowledge of the circumstances particular to the Veteran’s history and consideration of pertinent medical literature. 

As such, the Board concludes that the evidence is at least in equipoise that the Veteran’s hypertension is caused by his service-connected TBI. The Board resolves any reasonable doubt in the Veteran’s favor and concludes that service connection for hypertension is warranted.

2. Service connection for right knee condition, to include as secondary to left knee condition, is denied.

The Veteran and his attorney contend the Veteran’s right knee condition is due to his service-connected left knee condition. See VA Form 21-526, Fully Developed Claim (Compensation), dated November 7, 2014. 

Because the Veteran has not raised, and the record does not reasonably raise, entitlement to direct service connection, the Board’s adjudication will consider only entitlement to secondary service connection.

The question for the Board is whether the Veteran’s right knee condition is proximately due to, the result of, or is aggravated beyond its natural progress by his service-connected left knee condition.

The Board concludes that, while the Veteran has a current diagnosis of patellofemoral pain syndrome, the preponderance of the evidence is against finding that the Veteran’s right knee condition is proximately due to or the result of, or aggravated beyond its natural progression by his service-connected left knee condition. 38 U.S.C. § 1110; Allen v. Brown, 7 Vet. App. 439 (1995) (en banc); 38 C.F.R. § 3.310(a). 

Following a February 2015 VA examination, the VA examiner opined that the Veteran’s right knee condition is less likely than not proximately due to or the result of his service-connected left knee condition. The VA examiner also opined that Veteran’s right knee condition is less likely than not aggravated beyond its natural progression by his service-connected left knee condition. In support of the opinions, the VA examiner stated that the Veteran’s left knee condition does not cause an altered gait or affect use of the right knee in any way that would cause right knee pain or aggravation of right knee pain. 

The Board places great weight of probative value on the February 2015 VA examiner’s opinion. The VA examiner reviewed the record and had an opportunity to examine the Veteran. Furthermore, the opinion includes a discussion of how the Veteran’s left knee has not affected the Veteran’s gait or use of the right knee, and the opinion addresses both the causation and aggravation theories of entitlement. In addition, the rationale in the opinion is consistent with the record.

The Board acknowledges that the Veteran and his attorney believe the Veteran’s right knee condition is proximately due to or aggravated by his service-connected left knee condition. However, the Veteran and his attorney are not competent to provide a nexus opinion regarding this issue. The issue is medically complex, as it requires knowledge of anatomical relationships and disease processes. Therefore, it is outside the competence of the Veteran and his attorney in this case because the record does not show that they have the skills or medical training to make such a determination. Jandreau, 492 F.3d at 1377 n.4; see also Kahana v. Shinseki, 24. Vet. App. 428 (2011). 

Consequently, the Board gives more probative weight to the VA medical opinion. Accordingly, the preponderance of the evidence is against a finding that the Veteran’s right knee condition is caused or aggravated by the Veteran’s service-connected left knee disability. In reaching this conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable in this case. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56. 

Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4. The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. 

A Veteran’s entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The Board acknowledges that with respect to a claim for an increased rating for an already service-connected disability, a Veteran may experience multiple distinct degrees of disability that might result in different levels of compensation. See Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). The following analysis is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

When evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use or during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 204-07 (1995). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion. See Johnson v. Brown, 9 Vet. App. 7 (1996).

Degenerative and/or traumatic arthritis as shown by X-ray studies are rated based on limitation of motion of the affected joint. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010. When, however, the limitation of motion is noncompensable under the appropriate diagnostic code, a rating of 10 percent may be applied to each such major joint or group of minor joints affected by limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5003. The limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. Id. 

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Thus, with or without degenerative arthritis, it is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59; see Burton v. Shinseki, 25 Vet. App. 1, 5 (2011). In Petitti v. McDonald, 27 Vet. App. 415 (2015), the United States Court of Appeals for Veterans Claims (Court) rejected VA’s argument that § 4.59 requires painful motion, such that the mere presence of joint pain is not sufficient. Id. at 428-29. The Court held that under § 4.59, “the trigger for a minimum disability rating is an actually painful, unstable, or malaligned joint,” explaining that § 4.59 speaks to both painful motion of joints and actually painful joints. Id. at 425. Moreover, the Court held that § 4.59 does not require “objective” evidence but can be satisfied with lay and other non-medical evidence. Id. at 429.

1. Left Knee

The Veteran and his attorney generally contend the Veteran is entitled to an increased rating for his left knee condition. See VA Form 21-4138, Statement in Support of Claim, dated January 5, 2014. 

The AOJ has assigned the Veteran’s left knee condition a 20 percent rating throughout the appeal period under Diagnostic Code 5257. 

Under Diagnostic Code 5257, a 20 percent rating is warranted for moderate recurrent subluxation or lateral instability, and a 30 percent rating is warranted for severe recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a. 

Under Diagnostic Code 5260, a 10 percent rating is warranted where flexion is limited to 45 degrees, a 20 percent rating is warranted where flexion is limited to 30 degrees, and a 30 percent rating is warranted where flexion is limited to 15 degrees. 38 C.F.R. § 4.71a. 

Under Diagnostic Code 5261, a 10 percent rating is warranted where extension of the knee is limited to 10 degrees, a 20 percent rating is warranted where extension is limited to 15 degrees, a 30 percent rating is warranted where extension is limited to 20 degrees, a 40 percent rating is warranted where extension is limited to 30 degrees, and a 50 percent rating is warranted where extension is limited to 45 degrees. 38 C.F.R. § 4.71a. 

Normal ranges of motion of the knee are to 0 degrees in extension, and 140 degrees in flexion. 38 C.F.R. § 4.71, Plate II.

Separate ratings under Diagnostic Code 5260 and Diagnostic Code 5261 may be assigned for disability of the same joint. VAOPGCPREC 9-2004 (Sept. 17, 2004). The Veteran may also be assigned separate ratings for limitation of motion under Diagnostic Code 5260 or Diagnostic Code 5261 and for instability under Diagnostic Code 5257. See VAOPGCPREC 23-97 (July 1, 1997).

Consideration of other diagnostic codes for rating a knee disability (5256, 5258, 5259, 5262, 5263) is inappropriate in this case as the Veteran’s left knee disability does not include the pathology required in the criteria for those diagnostic codes (ankylosis, semilunar cartilage condition, removal of semilunar cartilage, malunion or nonunion of tibia or fibula, or genu recurvatum). 38 C.F.R. § 4.71a.

Here, the Board will address the evidence as it relates to the Veteran’s knee disabilities prior to addressing the Veteran’s claim for an increased rating for his left knee condition under Diagnostic Code 5257. 

The Veteran attended a VA examination in February 2015 for an evaluation of his left knee. The Veteran had full flexion and extension without pain. The Veteran had no additional loss of function or range of motion upon repetitive use testing. The examiner noted the Veteran had no pain with weight bearing, no crepitus, and no objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue. With repeated use over time, the examiner noted that pain caused functional loss. The examiner noted there was no additional contributing factor of disability. The Veteran had normal strength, no muscle atrophy, no ankylosis, no joint instability, no recurrent effusion, and no meniscal condition. The VA examiner noted that the functional impact of the Veteran’s left knee condition was that he had pain walking more than one block, he was unable to run, he could not play sports, he had pain with squatting and lifting heavy weights, and he was unable to secure work in policing due to his inability to run. The Veteran reported that he had popping and pain in the kneecap, pain with squatting, and pain with walking more than one block and running. The Veteran reported no flare-ups. 

At a March 2015 general VA examination for pension benefits, the Veteran had flexion to 135 degrees. No pain was noted in the left knee examination. The Veteran reported left knee pain and difficulty walking, walking on stairs, jumping and running. He also reported having pain with pivoting activities.

The Veteran attended an additional VA examination in December 2017 for an evaluation of his left knee. The Veteran had full flexion with pain and full extension without pain. The examiner noted the Veteran’s pain caused functional loss. The Veteran had no additional loss of function or range of motion upon repetitive use testing. The examiner noted the Veteran had no pain with weight bearing. The examiner noted the Veteran had crepitus and objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue. With repeated use over time, the examiner noted that pain and lack of endurance caused functional loss. The examiner noted there was no additional contributing factor of disability. The Veteran had normal strength, no muscle atrophy, no ankylosis, no joint instability, no recurrent effusion, and no meniscal condition. The VA examiner noted that the functional impact of the Veteran’s left knee condition was that he had mild reduction in repetitive squatting, kneeling, walking, and running. The Veteran reported that he had trouble running, climbing stairs, and walking for a long period. Furthermore, he reported he could not play sports. The Veteran reported flare-ups that consist of increased baseline pain.

Following a review of the evidence addressed above, the Board concludes that the evidence most nearly approximates the currently assigned 20 percent rating for the Veteran’s left knee condition under Diagnostic Code 5257.

The medical evidence of record illustrates that there has been no point in the appeal period where the Veteran has had severe recurrent subluxation or lateral instability, the requirement for a rating in excess of 20 percent under Diagnostic Code 5257. The February 2015 and December 2017 VA examinations reflect that the Veteran had no lateral instability, no recurrent subluxation, and normal strength. The United States Court of Appeals for Veterans Claims (Court) has held that Diagnostic Code 5257 does not require objective evidence of instability. English v. Wilkie, 30 Vet. App. 347 (2018). However, there are also no lay reports during the appeal period of instability or subluxation. The Veteran’s 20 percent rating under Diagnostic Code 5257 is protected as it has been in effect for 20 years. See 38 C.F.R. § 3.951(b). As there is no evidence of severe recurrent subluxation or lateral instability during the appeal period, a rating in excess of 20 percent is not warranted. 38 C.F.R. § 4.71a, Diagnostic Code 5257. 

The Board has considered whether the Veteran is entitled to a separate compensable rating for limitation of flexion of the left knee under Diagnostic Code 5260. The Board finds that the evidence shows an actually painful left knee joint on flexion throughout the appeal period. The Board acknowledges that the first evidence of painful flexion upon range of motion testing was at the December 2017 VA examination where the Veteran had full flexion but with pain. At the February 2015 examination, the VA examination one month after the Veteran filed his increased rating claim, the Veteran had full flexion without pain. However, as is noted above, the Court has held that 38 C.F.R. § 4.59 does not require “objective” evidence of painful motion and can be satisfied with lay and other non-medical evidence. Petitti, 27 Vet. App. at 429. At the February 2015 VA examination, the Veteran reported pain with squatting, running, and walking more than one block. At the December 2017 VA examination, the Veteran reported that he had trouble running, climbing stairs, and walking for a long period. The Board finds the Veteran’s lay reports of painful flexion to be competent and credible as he is competent as a layperson to report what he personally observes. See Layno v. Brown, 6 Vet. App. 465 (1994). Further, his statements have been consistent throughout the appeal. Thus, the Board concludes that a separate 10 percent rating for an actually painful left knee joint with limitation of flexion pursuant to 38 C.F.R. § 4.59 is warranted throughout the appeal period based on competent and credible evidence of painful flexion. A rating in excess of 10 percent under Diagnostic Code 5260 is not warranted as there is no evidence in the record that illustrates the Veteran has flexion limited to less than 45 degrees.

The Board has considered whether the Veteran is entitled to a separate compensable rating for limitation of extension of the left knee under Diagnostic Code 5261. The record does not reflect limitation of extension or pain or other functional impairment with limitation of extension that would warrant a separate compensable rating under Diagnostic Code 5261. The examinations of record have shown full extension to 0 degrees with no evidence of pain, even during flare up and after repetitive use. The Veteran’s statements regarding pain have not clearly indicated whether such pain and functional loss was due to both flexing and extending the left knee. As such, the Veteran’s reports of pain have been considered in the assigned 10 percent rating for limitation of flexion as there is objective evidence of pain with flexion during the appeal period, and the evidence does not more nearly approximate that the Veteran is also entitled to a separate 10 percent rating based on limitation of extension. Therefore, a preponderance of the evidence is against awarding a separate compensable rating under Diagnostic Code 5261.

In evaluating the Veteran’s increased rating claim for his left knee, the Board must address the provisions of 38 C.F.R. §§ 4.40 and 4.45. The Board recognizes the Veteran’s statements that his left knee condition causes difficulty with squatting, running, walking, and navigating stairs, and the Board has considered these statements in awarding the Veteran a separate 10 percent rating under Diagnostic Code 5260. However, even when considering the reported functional loss, the Veteran’s disability picture did not more nearly approximate flexion limited to 30 degrees, extension limited to 10 degrees, severe instability, or ankylosis. 

In sum, the Board finds the criteria for a rating in excess of 20 percent for the Veteran’s left knee condition have not been met during the pendency of the appeal. The Board finds that the Veteran is entitled to a separate 10 percent, but no higher, rating for painful limitation of flexion of the left knee throughout the appeal period. The Veteran is not entitled to any further separate ratings for the left knee.

2. Tinnitus

The Veteran and his attorney generally contend the Veteran is entitled to an increased rating for his service-connected tinnitus. See VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement), dated July 10, 2019. 

The Veteran has been assigned a 10 percent rating for his tinnitus under Diagnostic Code 6260. 38 C.F.R. § 4.87. Pursuant to Diagnostic Code 6260, a 10 percent rating is assigned for tinnitus, whether the sound is perceived as being in one ear, both ears, or in the head. The maximum schedular rating available for tinnitus is 10 percent. 38 U.S.C. § 1155; 38 C.F.R. § 4.87; Smith v. Nicholson, 451 F.3d. 1344 (Fed. Cir. 2006). As there is no legal basis upon which to award a higher schedular rating, or separate schedular ratings for each ear, the appeal must be denied. Sabonis v. Brown, 6 Vet. App. 426 (1994).

Earlier Effective Date Claims

Service Connection

Entitlement to an effective date prior to November 7, 2014 for the award of service connection for PTSD is denied.

The Veteran and his attorney contend the Veteran is entitled to an effective date prior to November 7, 2014 for his service-connected PTSD because the Veteran originally filed claims of entitlement to service connection for PTSD in November 2009 and February 2010. See Third Party Correspondence, dated February 10, 2017; VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement), dated July 10, 2019. 

In a February 2016 rating decision, the AOJ granted entitlement to service connection for PTSD effective February 16, 2016, the date VA received the Veteran’s claim for service connection for PTSD. In October 2016, the Veteran filed a timely VA Form 21-0958, Notice of Disagreement, appealing the effective date of the grant of service connection. In a May 2019 rating decision, the AOJ granted an earlier effective date of November 7, 2014 based on construing the Veteran’s claim for an increased rating for TBI with depressive symptoms received November 7, 2014 to reasonably encompass the later explicit claim for service connection for PTSD received February 16, 2016. 

Unless specifically provided otherwise in the statute, the effective date of an award based on an original claim for compensation or for a reopened claim for benefits shall be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. 

Regulations defining a “claim” were revised, effective March 24, 2015. See 79 Fed. Reg. 57,660 (Sept. 25, 2014). The revision eliminated informal claims and required claims on specific forms. In this case, VA received the Veteran’s claim for service connection for PTSD in February 2016. Thus, the regulations effective March 24, 2015 defining a claim would typically be applied. However, as is noted above, in the May 2019 statement of the case, the AOJ awarded the earlier effective date based on the November 7, 2014 claim. Therefore, the applicable regulations are those prior to the revision, as this claim was pending prior to March 24, 2015. As such, the Board will apply the regulations effective prior to March 24, 2015 regarding defining a claim.

A specific claim in the form prescribed by the Secretary is necessary for disability benefits to be paid to any individual under the laws administered by VA. 38 U.S.C. § 5101(a); 38 C.F.R. § 3.151. For VA compensation purposes, a “claim” is defined as a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement, to a benefit. 38 C.F.R. § 3.1(p). An informal claim is any communication or action indicating an intent to apply for one or more benefits, and identifying the benefit sought from a claimant, his or her authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not sui juris. See 38 C.F.R. § 3.155(a). Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year after the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155(b).

Thus, the essential elements for any claim, whether formal or informal, are (1) an intent to apply for benefits, (2) an identification of the benefits sought, and (3) a communication in writing. Brokowski v. Shinseki, 23 Vet. App. 79, 84 (2009). VA must look to all communications from a claimant that may be interpreted as an application or claim for benefits and is required to identify and act on informal claims for benefits. See Servello v. Derwinski, 3 Vet. App. 196, 198 (1992).

Here, a review of the record illustrates that the Veteran’s first contact with VA reflecting an intent to apply for benefits for service connection for PTSD was when he filed a VA Form 21-526, Application for Disability Compensation and Related Compensation Benefits in February 2016. However, as is noted above, the AOJ reasonably construed the Veteran’s November 7, 2014 claim for an increased rating for TBI with depressive symptomatology to encompass the Veteran’s February 2016 explicit claim for service connection for PTSD. Therefore, the Board must determine whether there is any communication in the record reflecting an intent to apply for benefits for PTSD prior to the November 7, 2014 effective date awarded by the AOJ. 

In a February 2017 statement, the Veteran’s attorney contended that the Veteran filed a claim for “mood swings” in November 2009 and for “emotional problems breakdown” in February 2010. See Third Party Correspondence, dated February 10, 2017. Furthermore, in that statement, the Veteran’s attorney stated that those claims are still open. Id. 

The Board acknowledges the Veteran’s November 2009 statement in which he stated that he in part stated he experienced mood swings since his in-service head injury. In addition, the Board acknowledges the Veteran’s February 2010 statement in which he stated his in-service head injury caused “emotional breakdown.” However, following the February 2010 statement, in a February 2010 rating decision, the AOJ assigned a 40 percent rating for traumatic brain injury, mild with tension headache, depressive symptomatology and history of posttraumatic benign positional vertigo effective November 20, 2009. As part of the rationale in the decision, the AOJ noted that there was no clinical evidence of a mental disorder. The Veteran did not appeal the decision, nor was any new and material evidence actually or constructively received within a year following the decision; therefore, the decision became final. 38 U.S.C. § 7105(c) (2012); 38 C.F.R. §§ 3.104(a), 3.156(a), 20.1103 (2019). For the reasons that follow, the Board finds that the February 2010 rating decision implicitly denied a claim of service connection for any psychiatric disorder, to include PTSD. 

“The ‘implicit denial’ rule provides that, in certain circumstances, a claim for benefits will be deemed to have been denied, and thus finally adjudicated, even if VA did not expressly address that claim in its decision. Adams v. Shinseki, 568 F.3d 956, 961 (Fed. Cir. 2009). “The implicit denial rule is, at bottom, a notice provision.” Id. at 965.

In Cogburn v. Shinseki, 24 Vet. App. 205 (2010), the Court set forth four factors that must be considered when determining whether a claim was implicitly denied: (1) “The relatedness of the claims;” (2) “whether the adjudication alluded to the pending claim in such a way that it could reasonably be inferred that the prior claim was denied;” (3) “the timing of the claims;” and (4) whether “the claimant is represented.” Id. at 212-14. 

In this case, each Cogburn factor has been met. Here, the Veteran’s TBI had been characterized to include depressive symptomatology and his claim indicated that he continued to have such symptoms related to the TBI, so a service connection for a psychiatric condition as secondary to the TBI was related to the claim for an increased rating for TBI. 

In regard to the second factor, in the rationale in the February 2010 rating decision, the AOJ specifically explained when adjudicating the Veteran’s claim for an increased rating for TBI with depressive symptomatology that there was no clinical evidence of a mental disorder. The rating criteria for TBI specifically provide that any emotional/behavioral dysfunction should be evaluated under § 4.130 (Schedule of ratings – mental disorders) when there is a diagnosis of a mental disorder and that when there is no diagnosis of a mental disorder they should be evaluated under the TBI evaluation criteria. 38 C.F.R. § 4.124a, Diagnostic Code 8045. Thus, by declining to evaluate any mental health symptoms, including mood swings or emotional breakdowns, under § 4.130, and finding that there was no mental disorder diagnosis, the AOJ implicitly denied any claim seeking service connection for a psychiatric disorder.

Regarding the third factor, the timing of the claims, the Veteran mentioned the depressive symptomatology in conjunction with his claim seeking an increased rating for TBI, which was denied in the February 2010 rating decision. 

For the fourth factor, the Veteran at that time was represented by The American Legion, a Veterans Service Organization (VSO). VA is required to read filings liberally when a claimant is either pro se or represented by a VSO. Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). Even reading the filings liberally, the Board finds that the February 2010 rating decision implicitly denied a claim of service connection for any psychiatric disorder, to include PTSD.

The Veteran did not initiate an appeal of the February 2010 rating decision, nor did VA actually or constructively receive any new and material evidence within a year following the decision; therefore, the decision became final. 38 U.S.C. § 7105(c) (2012); 38 C.F.R. §§ 3.104(a), 3.156(a), 20.1103 (2019). As it is a final decision it is not subject to revision in the absence of clear and unmistakable error (CUE) in the decision. 38 U.S.C. §§ 5109A, 7105; see Rudd v. Nicholson, 20 Vet. App. 296 (2006) (finding that only a request for revision based on CUE could result in the assignment of an effective date earlier than the date of a final decision). A sympathetic reading of the Veteran’s statements and testimony do not reflect that the Veteran has raised a claim of CUE regarding this particular issue in the February 2010 decision. See Andrews v. Nicholson, 421 F.3d 1278, 1282 (Fed. Cir. 2005). Therefore, the finality of the February 2010 rating decision precludes the Veteran from obtaining an effective date prior to the date of that rating decision.

As such, the Board next considers whether any statement received after the February 2010 rating decision was an informal or formal claim seeking benefits for PTSD or any acquired psychiatric disorder. A review of the record illustrates that there was no correspondence, regarding service connection for PTSD or any acquired psychiatric disorder, from the February 2010 rating decision until the Veteran’s November 7, 2014 application for an increased rating for his service-connected TBI with depressive symptomatology. There is no indication VA received any other informal communication, either orally or in writing, prior to November 7, 2014 relating to an acquired psychiatric disorder. Therefore, the Veteran’s November 7, 2014 application for an increased rating is considered to be the date of the Veteran’s informal claim for his claim of entitlement to service connection for PTSD. 

The Board notes that the exact date on which entitlement arose need not be ascertained in order to conclude that the November 7, 2014 date selected by the AOJ is the earliest possible effective date here with regards to the claim of service connection for PTSD. If entitlement arose prior to November 7, 2014, then the date of claim would be the later of the two dates, and hence the correct effective date as provided by 38 C.F.R. § 3.400(b)(2). Moreover, while VA must interpret a claimant’s submissions broadly, VA is not required to conjure up issues not raised by a claimant.

In sum, the Board finds that the legally correct date of the grant of service connection for PTSD is November 7, 2014, the date of the Veteran’s informal claim seeking entitlement to service connection for PTSD. Therefore, the Veteran is not entitled to an earlier effective date, and the claim is denied.

Increased Rating

Entitlement to an effective date prior to November 20, 2008 for the 40 percent disability rating for TBI is denied.

The Veteran and his attorney contend the Veteran is entitled to an effective date prior to November 20, 2008 for the 40 percent rating for TBI. See VA Form 21-0958, dated October 19, 2016. 

VA received the Veteran’s claim for an increased evaluation for his service-connected TBI on November 7, 2014. At the time of the increased rating claim, the Veteran had a 40 percent rating effective November 20, 2009. 

A discussion of the procedural history for the Veteran’s service-connected TBI is necessary prior to providing an analysis of the Veteran’s earlier effective date claim. In a November 20, 2009 statement, the Veteran requested an increased rating for his service-connected TBI, which at the time the AOJ had assigned a 10 percent rating effective in May 1997. In a February 2010 rating decision, the AOJ increased the Veteran’s rating to 40 percent effective November 20, 2009, the date VA received the Veteran’s claim. The AOJ issued a rating decision in December 2013 continuing the 40 percent rating effective November 20, 2009. 

The Veteran then filed a claim for an increase in his rating for TBI that was received by VA on November 7, 2014. In an April 2015 rating decision, the AOJ continued the 40 percent rating effective November 20, 2009. The Veteran filed a timely VA Form 21-0958, Notice of Disagreement in September 2015 appealing the 40 percent rating. In a September 2016 rating decision, the AOJ found clear and unmistakable error was made in a prior rating decision and assigned the 40 percent rating effective November 20, 2008. The Veteran then filed a timely VA Form 21-0958, Notice of Disagreement in October 2016 appealing in part for an effective date prior to November 20, 2008. The claim for an effective date prior to November 20, 2008 is now before the Board after the Veteran opted into the modernized review system after submitting his July 2019 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement) in response to the May 2019 statement of the case that continued the November 20, 2008 effective date. 

Effective October 23, 2008, VA amended 38 C.F.R. § 4.124a, Diagnostic Code 8045. See Schedule for Rating Disabilities; Evaluation of Residuals of Traumatic Brain Injury (TBI), 73 Fed. Reg. 54,693 (effective October 23, 2008). These revisions were a liberalizing change to the criteria used to evaluate TBI.

Section 3.114 of 38 C.F.R. provides that where a benefit is awarded pursuant to a liberalizing law or VA issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the act. 38 C.F.R. § 3.114(a). If a claim is reviewed on the initiative of VA within one year from the effective date of the law or VA issue, or at the request of a claimant received within one year from that date, benefits may be authorized from the effective date of the law or VA issue. Id. § 3.114(a)(1). If a claim is reviewed at the request of the claimant more than one year after the effective date of the law or VA issue, benefits may be authorized for a period of one year prior to the date of receipt of such request. Id. § 3.114(a)(3). In order for a claimant to be entitled to a retroactive payment under this provision, the evidence must show that the claimant met all eligibility criteria for the liberalized benefit on the effective date of the liberalizing VA issue and that such eligibility existed continuously from that date to the date of claim. Id. § 3.114(a).

Here, VA notified the Veteran in March 2009 of the change in the rating criteria for TBI. In the March 2009 letter, VA also notified the Veteran that if he qualified for increased compensation, the increase could be paid up to one year retroactively, but not before the new criteria went into effect on October 23, 2008.

The Veteran requested an increase in his rating for his service-connected TBI on November 20, 2009, which was more than one year after the October 23, 2008 effective date of the change to the criteria used to evaluate TBI. In September 2016, the AOJ found clear and unmistakable error in their prior February 2010 rating decision regarding the effective date assigned and assigned an effective date of November 20, 2008 for the Veteran’s 40 percent rating for his service-connected TBI. Therefore, the earliest possible effective date for the award of an increased rating is the already assigned date of November 20, 2008 (which is one year prior to the date of his claim requesting review under the new TBI evaluation criteria), in accordance with 38 C.F.R. § 3.114(a)(3), as he filed his claim more than one year after the effective date of the liberalizing VA issue. As such, the Veteran is not entitled to an effective date prior to November 20, 2008, and the claim is denied. 

REASONS FOR REMAND

1. Entitlement to service connection for low back condition is remanded.

The issue of entitlement to service connection for a low back condition is remanded to correct a duty to assist error that occurred prior to the May 2019 statement of the case on appeal. 

The Veteran contends his low back condition is the result of the in-service fall that caused his service-connected TBI. See VA Form 21-4138, Statement in Support of Claim, dated October 28, 2013. Alternatively, at a December 2014 VA appointment, the Veteran alleged that his knee pain may be causing his low back condition. The AOJ did not obtain a VA examination prior to the May 2019 statement of the case regarding whether the Veteran’s low back condition, diagnosed as lumbar strain, is related to his in-service fall or is caused or aggravated by his service-connected left knee condition. However, based on the evidence associated with the claims file prior to the May 2019 statement of the case, the Board finds that a VA examination or medical opinion is required to determine the etiology of the Veteran’s low back condition.

2. Entitlement to an initial rating in excess of 30 percent for complicated tension headaches is remanded.

The Veteran most recently attended a VA examination for his service-connected headaches in October 2016 where he reported he had headaches three to four times per month that last hours. The Veteran reported he did not take medication for his headache condition. In a February 2017 statement, the Veteran reported his migraines occurred at least two times per week and that they always lasted eight hours or more. He stated he had to go to sleep to make them go away. In addition, in a May 2019 letter received prior to issuance of the May 2019 statement of the case, Dr. M.C. stated the Veteran reported tension-migraine type headaches that occurred several times per week. The Veteran’s reports of an increase in the frequency of his headaches is evidence of worsening of the Veteran’s headache condition since the October 2016 VA examination. Thus, an additional VA examination is necessary to evaluate the Veteran’s headache condition as the VA examinations before the AOJ at the time of the May 2019 rating decision were inadequate to evaluate the severity of the condition after the Veteran reported an increase in his symptoms prior to the May 2019 rating decision. 

3. Entitlement to separate ratings for the single 70 percent evaluation for PTSD and TBI is remanded.

4. Entitlement to a rating in excess of 70 percent for the combined PTSD and TBI rating effective November 7, 2014 is remanded.

5. Entitlement to an effective date prior to November 7, 2014 for the 30 percent disability rating for complicated tension headaches is remanded.

The Veteran filed a claim for an increased rating for TBI on November 7, 2014. In an April 2015 rating decision, the AOJ continued the Veteran’s 40 percent rating for TBI. The Veteran filed a claim for service connection for PTSD on February 16, 2016. In a September 2016 rating decision, the AOJ granted service connection for PTSD with a 70 percent rating effective February 16, 2016, and the AOJ awarded the Veteran an earlier effective date of November 20, 2008 for his 40 percent rating for TBI. In a May 2019 rating decision, the AOJ assigned a single 70 percent rating for the Veteran’s PTSD and TBI effective November 7, 2014, the date of the Veteran’s claim for an increased rating for TBI and awarded a separate 30 percent rating for complex tension headaches under Diagnostic Code 8100. The AOJ continued the single 70 percent rating for PTSD and TBI in a May 2019 statement of the case. The Veteran has alleged that PTSD and TBI should not have been combined and that he is entitled to separate ratings for these disabilities, or alternatively that he is entitled to a higher rating for the combined PTSD and TBI rating. 

The Board notes that the Veteran has attended multiple VA examinations during the appeal period for an evaluation of his PTSD and TBI, but a review of the record illustrates that an additional VA examination and opinion should have been obtained prior to the May 2019 statement of the case to determine, if possible, the symptoms that are attributable to PTSD and what symptoms are attributable to TBI.

Following a February 2015 VA examination, the VA examiner opined that it is less likely as not that the Veteran has a coexisting psychiatric condition. 

In an April 2015 VA examination report for the Veteran’s psychiatric disorder, the VA examiner noted that the symptoms attributable to the Veteran’s TBI were mild memory impairment, mild to moderate headaches, irritability, verbal aggression, moodiness, and vertigo. The April 2015 VA examiner diagnosed the Veteran with adjustment disorder with depressed mood, which the examiner noted was not related to the Veteran’s service. 

In a March 2016 VA examination report for the Veteran’s PTSD, the VA examiner diagnosed the Veteran with PTSD and TBI. The VA examiner stated it was possible to differentiate the symptoms attributable to the Veteran’s PTSD and TBI diagnoses, but the only symptom the examiner listed was that the Veteran’s recurring headaches were attributable to his TBI. 

The Veteran attended an additional VA examination in October 2016. In the examination report, the examiner listed hearing loss and/or tinnitus, headaches, and mental disorder as residuals of TBI. The VA examiner then listed the following symptoms under the diagnoses section: bilateral tinnitus, poor sleep/insomnia, headache, diminished concentration, diminished short term memory, subjective impaired executive functioning due to reported inattention and slowed speed of information processing, mood lability along with anxiety and depression, and neurobehavioral difficulty with social isolation and a lack of empathy. The VA examiner then opined that 

[t]hese diagnoses may be in the context and background of PTSD or other psychiatric conditions. Due to the overlapping nature of the symptoms of TBI with theses psych diagnoses, I cannot say without resort to speculation as to whether TBI or a psych condition directly cause these symptoms, concurrent complaints, or concurrent medical issues. 

The Court held in Jones v. Shinseki, 23 Vet. App. 382 (2010), that a VA medical examiner’s report was inadequate where an examiner failed to articulate a reasoned explanation for his conclusion that no opinion was possible without resort to mere speculation. As the examiner provided no explanation, including a discussion of the earlier VA opinions in the record attributing certain symptoms to the Veteran’s TBI, for his finding that he could not say without resorting to mere speculation whether the Veteran’s diagnosed PTSD or TBI caused the listed symptoms, the opinion is inadequate, and a new VA examination is warranted. The October 2016 VA opinion was before the AOJ at the time of the May 2019 statement of the case, so the error is a pre-decisional duty to assist error and remand is necessary to fix the error. 

The Board also finds that the matter seeking an earlier effective date for the 30 percent disability rating for complicated tension headaches is inextricably intertwined with the question regarding entitlement to separate ratings for TBI and PTSD, as a decision on that claim could potentially affect the effective date of the award of a separate rating for complicated tension headaches. Thus, a remand of that claim is required.

6. Entitlement to an effective date prior to November 7, 2014 for TDIU is remanded.

7. Entitlement to an effective date prior to November 7, 2014 for Dependents’ Educational Assistance under 38 U.S.C. chapter 35 is remanded.

Because a decision on the remanded issues of increased ratings for PTSD and TBI could significantly impact a decision on the issues of an effective date prior to November 7, 2014 for TDIU and Dependents’ Educational Assistance, the issues are inextricably intertwined. Thus, a remand of the claims for an effective date prior to November 7, 2014 for TDIU and Dependents’ Educational Assistance is required. 

The matters are REMANDED for the following actions:

1. Provide the Veteran an appropriate VA examination or telehealth interview, if an in-person examination is not feasible, to determine the nature, extent, and etiology the Veteran’s low back condition. The electronic claims file must be made available to the examiner for review in connection with the examination. All indicated tests should be conducted, and the reports of any such studies incorporated into the examination reports to be associated with the claims file. 

(a.) Is it at least as likely as not (50 percent or greater probability) that the Veteran’s low back condition is related or attributable to his military service, to include the January 1994 fall. 

(b.) Is it at least as likely as not (50 percent or greater probability) that the Veteran’s low back condition is caused by his service-connected left knee condition?

(c.) Is it at least as likely as not (50 percent or greater probability) that the Veteran’s low back condition is aggravated (i.e., any increase in the severity beyond its natural progression) by his service-connected left knee condition?

If the Veteran’s low back condition has been aggravated by his service-connected left knee condition, the VA examiner should also indicate the extent of such aggravation by identifying the baseline level of disability. This may be ascertained by the medical evidence of record and also by the Veteran’s statements as to the nature, severity, and frequency of his observable symptoms over time.

The examiner must fully explain the rationale for any opinion, with citation to supporting clinical data/lay statements, as deemed appropriate. If the examiner cannot provide the requested opinion without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation.

2. Schedule the Veteran for an appropriate VA examination or telehealth interview, if an in-person examination is not feasible, to evaluate the severity of the Veteran’s complicated tension headaches. The entire claims file should be made available to the examiner in conjunction with this request. All testing deemed necessary to rate a headache disability under the criteria of the rating schedule must be conducted and the results reported in detail.

3. Schedule the Veteran for an appropriate VA examination or telehealth interview, if an in-person examination is not feasible, to evaluate the severity of the Veteran’s PTSD and TBI disabilities. The entire claims file should be made available to the examiner in conjunction with this request. All testing deemed necessary to rate PTSD and TBI separate and in combination under the criteria of the rating schedule must be conducted and the results reported in detail.

The examiner is asked to address the following.

(a.) Identify the symptoms associated with the Veteran’s PTSD and TBI that are attributable specifically to the Veteran’s PTSD and which symptoms are attributable specifically to the Veteran’s TBI. 

(b.) Specifically address the following symptoms identified at the October 2016 VA examination and provide an opinion as to which symptoms are attributable specifically to the Veteran’s PTSD and which symptoms are attributable specifically to the Veteran’s TBI. 

i) Poor sleep/insomnia;

ii) Diminished concentration;

iii) Diminished short-term memory;

iv) Subjective impaired executive functioning due to reported inattention and slowed speed of information processing;

v) Mood lability along with anxiety and depression; and

vi) Neurobehavioral difficulty with social isolation and a lack of empathy. 

(c.) For any symptom identified that is attributable specifically to the Veteran’s PTSD and/or TBI, provide a retrospective opinion as to whether the identified symptom(s) was attributable effective November 7, 2014. 

The examiner must fully explain the rationale for any opinion, with citation to supporting clinical data/lay statements, as deemed appropriate. If the examiner cannot provide the requested opinion without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation regarding the symptoms that are attributable to the Veteran’s PTSD and which symptoms are attributable to the Veteran’s TBI. 

4. After completing the above requested development, readjudicate the issues of entitlement to an effective date prior to November 7, 2014 for the rating for migraine headaches, and awards of TDIU and Dependents’ Educational Assistance.

 

 

M. SORISIO

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board N. Breitbach, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.